1

```
 1                 UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MINNESOTA

 3    --------------------------------------------------------

 4    Federal Trade Commission,

 5                   Plaintiff,

 6         vs.                          Case No. 08-6379

 7    Ovation Pharmaceuticals, Inc.,

 8                   Defendant.

 9    --------------------------------------------------------

10    State of Minnesota,

11                   Plaintiff,

12         vs.                          Case No. 08-6381

13    Ovation Pharmaceuticals,

14                   Defendant.

15    --------------------------------------------------------

16

17              THE HONORABLE JEANNE J. GRAHAM

18              United States Magistrate Judge

19

20                        *   *   *

21                 TRANSCRIPT OF PROCEEDINGS

22                        *   *   *

23

24                        Date:  February 6, 2009

25                        Reporter:  Leslie Pingley
```

2

```
 1                    APPEARANCES

 2

 3

 4             MR. KYLE E. CHADWICK, MR. MARKUS H. MEIER

 5    and MR. ROBERT CANTERMAN, Attorneys at Law,

 6    601 New Jersey Avenue NW, Washington, DC 20580 appeared

 7    on behalf of the Federal Trade Commission.

 8

 9

10             MR. ALAN GILBERT, MR. GABRIEL R. GERVEY

11    and MS. KRISTEN M. OLSON, Attorneys at Law, 445

12    Minnesota Street, Suite 1200, Saint Paul, Minnesota

13    55101 appeared on behalf of the State of Minnesota.

14

15

16             MR. SEAN M. BERKOWITZ, Attorney at Law,

17    233 South Wacker Drive, Suite 5800, Chicago, Illinois

18    60606 appeared on behalf of named Defendant.

19

20

21             MR. STEVE W. GASKINS, Attorney at Law,

22    333 South Seventh Street, Suite 2900, Minneapolis,

23    Minnesota 55402 appeared on behalf of named Defendant.

24
```

25

3

```
1                    P R O C E E D I N G S

2

3               (NO REPORTER WAS PRESENT - The following

4        transcript was prepared from a COPY of the

5        original court recording)

6

7               THE COURT: We are here in the matter

8        of Federal Trade Commission vs. Ovation as well

9        as the State of Minnesota vs. Ovation.  Civil

10       File No. 08-6379 and 08-6381.  Assigned to

11       District Court Judge Joan Ericksen and myself

12       Jeanne Graham as Magistrate Judge and we're here

13       today for a Rule 16.  I usually do these in my

14       chambers, but my chambers just aren't big enough,

15       so here we are and I decided since we're all in

16       here in the court room and I have got my robe on

17       and everything we'll go ahead and record it, so

18       we're on the record.

19              May I have appearances first by the

20       Federal Trade Commission.

21              MR. CHADWICK: Your Honor, for the

22       Federal Trade Commission, Kyle Chadwick and with
```

23          me is Mark --

24                  Shall I approach, Your Honor?

25                          THE COURT: No, you can just stand.

4

1                          MR. CHADWICK:  Kyle Chadwick.  With

2          me is Markus Meier and also Robert Canterman.

3                          THE COURT: Okay.  And who's going to

4          be arguing, today?

5                          MR. CHADWICK: I will, Your Honor.

6                          THE COURT: Well, not arguing.

7          We're in a Rule 16.  I'm hopefully not going to

8          have a lot of argument.

9                  How about for the State of Minnesota?

10                         MR. GILBERT: Your Honor, my name is

11         Alan Gilbert representing the State along with

12         Kristen Olson and Gabriel Gervey.

13                         THE COURT: Mr. Gilbert, are you

14         arguing?

15                         MR. GILBERT: Yes, I will.

16                         THE COURT: All right.  And how about

17         for Ovation?

18                         MR. GASKINS: For Ovation, Your

19         Honor, Steve Gaskins, Flynn Gaskins & Bennett

20         along with Sean Berkowitz from Latham & Watkins

21          and Mr. Berkowitz will be doing --

22                    THE COURT: Arguing or discussing.

23          We will all be discussing now.  Now, from here on

24          out we can just stay at the counsel table, all

25          right, and you can just talk into those

5

1          Microphones there.  You can remain seated.  Okay.

2                    I would like to start with just the

3          scheduling piece and things have been discussed,

4          but before we actually get to that, before I even

5          ask you about your positions on this, I think I

6          need to know what the universe of this case is.

7          I have a suspicion you have folks have been going

8          through this awhile, so I need to know what's

9          been done up to now and kind of where we are at,

10          so I was going to have the FTC start.  Let us

11          know from your angle where do you think you are.

12                    MR. CHADWICK:  Certainly, Your

13          Honor, just briefly I'm sure the Court has read

14          the papers, but the FTC is challenging the

15          legality of a practical transaction --

16                    THE COURT: Right.

17                    MR. CHADWICK:  -- which was the

18          acquisition of rights to a drug.

19          And we're also seeking disgorgement as

20     one of our remedies, so we will need some

21     discovery into really both the circumstances

22     surrounding the transactions of both of the

23     acquisitions of both drugs.  There was one in

24     late '05 and one in early '06 and we will need

25     some financial discovery in order to calculate

6

1      the damages because it's not -- it's not damages

2      as the reason.  It's disgorgement amount that

3      we're alleging that was unlawfully acquired, so

4      it's not information we have any access to.  It

5      has to come from the defendant's books.

6          At this point we have -- both sides

7      actually have exchanged document requests and we

8      have had some very productive discussions about

9      production of documents.  We haven't -- we

10     anticipate any day now -- we haven't quite gotten

11     our production from defendants.  The FTC did

12     acquire a certain number of documents in the

13     pre-complaint investigation, but not anything

14     like we would need for the case, so that's where

15     we are and we have produced virtually all of the

16     documents, both from defendants itself and from

17          third parties that we obtained in that

18          investigation.  So we're close to exchanging

19          documents, but we haven't seen what defendant has

20          yet.

21                    THE COURT: Okay.  And is -- what I

22          am trying to get a handle on is what the

23          pre-complaint investigation looked like.  Were

24          there depositions?  Was it just looking at

25          documents?  What kind of --

7

1                    MR. CHADWICK: It was largely -- it

2          was documents, first of all.  It was voluntarily

3          produced documents.  The Government did not issue

4          any compulsory process.  As we understand it,

5          Ovation did a search of some limited number of

6          document custodians.

7               There were two rather short what are

8          called FTC investigational hearings which are

9          under oath.  They are not technically depositions

10         and that one -- one was of an Ovation employee

11         and one was an employee of one of the selling

12         companies, so that was the extent of it.

13                    THE COURT: Okay.  Let me here from

14         the state and then I will hear from Ovation.

15          MR. GILBERT:  Thank you, Your Honor.

16     The State is working closely with the FTC on this

17     particular matter.  The claims are similar,

18     although some of the legal bases for the claims

19     are different obviously.  We have anti-trust

20     claims under both Federal and State law, unjust

21     enrichment claim in terms of a remedy.

22          We intend to work closely with the FTC in

23     the discovery stage of this as well as at the

24     trial and to the extent the FTC has received

25     documents already, we are privy to those

8

1      documents and have discussed those with the FTC.

2               THE COURT: Okay.  All right.  Okay.

3      How about from Ovation?

4               MR. BERKOWITZ: We have a slightly

5      different view, Your Honor.  Obviously our

6      position with respect to the merits of the case,

7      I think, is set forth in our disclosure and you

8      have inquired about the status of discovery.

9          Beginning last spring the FTC requested

10     materials from Ovation on a voluntary basis eight

11     months before the Complaint was filed.  In a

12     series of four or five productions we produced

13          over 9,000 documents consisting of almost 50,000

14          pages of materials.  We have also made extensive

15          presentations to the FTC about the merits of the

16          case, bringing voluntarily people from the

17          company, outside consultants and so forth, in

18          meetings and extensive written presentations to

19          them about our position.

20               We also voluntarily produced an

21          individual for a deposition, investigative

22          transcript which we received only recently.

23               When the case was filed in December, we

24          asked, although it was around the holidays, we

25          asked for an early pre-trial conference and we

9

1          had one at the end of December at which time we

2          talked about the exchange of documents.

3               We only recently received documents that

4          the FTC had on -- in an initial wave of

5          production I believe about ten days ago ask and

6          similarly from the State of Minnesota.

7               I don't know for certain whether we have

8          all of the documents that they have collected

9          during the eight months of investigation that

10          they had.

11          If they are representing to the Court

12     today that we have 100 percent of all the

13     documents they have including third party

14     documents, I am surprised but I am happy to hear

15     that.  We have had discussions and debates with

16     them about the third party documents that they

17     have collected.  There was an issue related to a

18     protective order in place and they didn't produce

19     documents claiming that the protective order was

20     delaying the production of those documents to us.

21          We had asked to get a sense of the scope

22     of those documents and clearly non-privileged

23     documents including, for example, what the scope

24     of the request was, the identifies of the third

25     parties and I don't think that we received that

10

1      to date.

2          With respect to the protective order

3      issue, we have now reached a preliminary

4      agreement with one caveat and I think you're

5      aware of that.  With the preliminary agreement I

6      think would allow for production of materials to

7      us of all third party documents with the issue of

8      in-house counsel having access as the one that we

9          can talk about at a later time.

10                    THE COURT:  Okay.

11                    MR. BERKOWITZ:  We are anxious to

12         move forward as quickly as possible.  We are

13         going to comply with the date that is required

14         under our schedule for production of our

15         documents and I don't think it's fair to say that

16         we've been holding back.  We have provided

17         extensive pre-complaint discovery and we are

18         working along with the schedule that we've

19         agreed.  We've come up with a search term

20         limitation with the FTC and I think we've been

21         working expeditiously to get those documents

22         which we will have to them consist with the

23         schedule that we had proposed.

24                    THE COURT: All right.  Well, okay.

25         That gives me a better idea.


                                                      11


1                    What does a trial look like in this case?

2         Both sides agree it's a bench trial, all sides I

3         mean?

4                    MR. CHADWICK:  Yes, Your Honor.

5                    MR. BERKOWITZ:  Yes.

6                    THE COURT: Okay.  So what does a

7   trial look like and how is the trial different

8   from dispositive motion practice?

9           MR. CHADWICK:  The issues at trial

10   would be, among others things, we as we

11   understand it, Ovation is not admitting that

12   these two drugs actually compete.  There would

13   have to either some dispositive disposition for

14   that order or that would be an issue at trial.

15       There would certainly be the issue of the

16   amount of disgorgement and the remedy, equitable

17   remedy other than disgorgement that would need to

18   be tried.

19           THE COURT: Is it witnesses that you

20   anticipate at a trial or will it -- you know, is

21   the summary judgment motion with all of the

22   exhibits that you might put in basically that

23   same issue?

24           MR. BERKOWITZ: I mean certainly

25   from Ovation's perspective we are confident that

12

1   we'll be able to make a very effective

2   presentation in summary judgment.  We would hope

3   that that would resolve the case.

4       Obviously we don't know all of the

```
 5          information that the FTC has gathered and we're

 6          looking into that to see whether on the key

 7          issues there truly are issues of material fact.

 8          I think our position is this is a case that's

 9          ripe at least for portions, if not the entire

10          portion, to be resolved at the summary judgment

11          stage based on what we believe to be the clear

12          record consistent with what we communicated to

13          them.

14                 They obviously have a different view and

15          I think we need to conduct some discovery in

16          order to make that determination.

17                     THE COURT: Okay.

18                     MR. GILBERT: Your Honor, we agree

19          with that assessment about the FTC and the

20          defendants.  I think we have to wait and see

21          whether summary judgment is appropriate or not.

22          It could conceivably be.

23                 We anticipate though that there will be

24          the need for, excuse me, expert testimony and how

25          that might pan out we'll have to wait and see as
```

```
 1          well.

 2                     THE COURT: And how long of a trial,
```

3          if you had to go to trial, are you thinking

4          about?

5                    MR. GILBERT:  We have discussed it

6          with the FTC and we're thinking two weeks.

7                    THE COURT: Two weeks.

8                    MR. GILBERT:  Uh-huh.

9                    MR. BERKOWITZ:  Your Honor, I

10         think --

11                   THE COURT: Other than you'd like

12         that to be shorter, do you have any -- would you

13         think it would be longer than that I guess?  I

14         always like to know what the outside chance is

15         for --

16                   MR. BERKOWITZ:  I guess the question

17         is if their case in chief is a week, we probably

18         want a week as well, so if that's what they are

19         talking about, I think that that's consistent

20         that we would want an equal amount of time.

21                   THE COURT: Okay.  All right.  That

22         helps.  Okay.

23              With all of that information, let me go

24         through my worksheet then and I will tell you

25         based on everything I have read and if you have

1      certain comments, I will allow you to address

2      them.

3            At the Rule 16 it's a little bit more of

4      a cooperative effort to try to figure out how we

5      are going to do it and then if you have a dispute

6      I would make the call and then we're done, but so

7      my first -- my first area is initial disclosures

8      and we don't have a date for that. Now, normally

9      that's two to three weeks after we have a Rule

10     16.

11           Does that sound okay for everyone?

12                 MR. CHADWICK:  We have actually done

13     that, Your Honor.

14                 THE COURT: That's what I thought,

15     yes.  So that's been completed.

16           I should let you know what's going on

17     right from the beginning.  I even think that the

18     defenses -- not the defenses.  The State and the

19     FTC's suggestions regarding how fast this can go

20     is a pretty aggressive program, so I am not going

21     with Ovation on this one.  I know you want to get

22     it done quickly, but the reality of where we are

23     in Federal Court, in other words, I have got to

24     think about where Judge Ericksen may possibly be

25     in terms of being able to get you in for a trial

1    realistically even.

2              MR. BERKOWITZ:  And, Your Honor, we

3    certainly -- everything that we suggested is, of

4    course, subject to the Court's schedule, what we

5    want to communicate and I think we would like to

6    do things as quickly as we can.

7              THE COURT: And that is fine.  I

8    think -- I think if we go with primarily, in

9    essence, the suggestions of the plaintiff's in

10   this case that we are going pretty much as

11   quickly as we can.  I will put out there right

12   now that I even tried to make a phone call so

13   that I could find out from Judge Ericksen's

14   chambers, I don't usually, but it's usual -- let

15   me just be honest, the last anti-trust case I had

16   was two years, so this is -- this is not quite --

17   there's a lot of smaller issues here thankfully,

18   but you know, they have the potential, as you

19   know and Judge Ericksen, I know, has got a ton or

20   her plate, so this was the message and so now we

21   work backwards and I think if we do it primarily

22   on the Governments, and I am just going to call

23   you guys the Government table, if we do primarily

24   their schedule we can fit it in, but even then

25   she will not have time for a particularly -- like

1        a two-week trial until September, so there's not

2        much I can do about that.  Even taking their

3        deadlines, she requires four months between

4        dispositive motions and trials now, so it's a

5        little bit different.

6                But even for me to say to you that they

7        could maybe get you in in September is a victory

8        for everyone.  That's fast here, so -- I mean

9        unless it's a TRO or something, but that's pretty

10       darn good.

11               So what I will do, I think, based on

12       everything I am hearing then is you will hear

13       dates that are primarily submitted by the

14       Government and then I will have some questions.

15               So having said that, fact discovery

16       deadline will be 4/17/09, so work away quickly.

17       I don't know how you will get 15 depositions done

18       between now and then with the old -- let's see,

19       Mr. Berkowitz, where are you from again?

20                    MR. BERKOWITZ:  I am from Chicago,

21       Your Honor.

22                    THE COURT: So understand.  March is

23       get out of winter mode, but do whatever you guys

24       can to get those done.

25                    MR. BERKOWITZ:  They seem to have a

                                                              17

1            lot of people at their table, so we will have to

2            see if we can come up with enough to cover those

3            depositions, but we will do our part, Your Honor.

4                    THE COURT: The other thing you can

5            do, and I am fine with -- if you folks, no matter

6            what I say here today, if everyone is working

7            hard and you folks come up with a stipulation to,

8            you know, modify what we're going to say today, I

9            pretty regularly allow you as the experts of the

10           case to do that.

11                   If it starts getting into multiple,

12           dragged out requests for continuance, then I

13           stick my nose in it.  Otherwise, the other thing

14           that sometimes happen is people will agree to do

15           certain depositions after the discovery deadline

16           and that's fine with me too.

17                   MR. BERKOWITZ:  What may be helpful,

18           Your Honor, in that regard, because I understand

19           that it's aggressive, it is, to really find out

20           who's going to be at trial and who's not.

21                   The last thing that we want to do is

22           depose people who are not going to be at trial

23          and not truly relevant, to make sure that we work

24          together towards doing that and truly identify

25          the people that are the appropriate ones and I

18

1           think we may be working towards that in their

2           initial disclosures.  They have identified over

3           20 institutions without a particular individual

4           and I think just yesterday we received a more

5           narrow list and if we could continue working in

6           that vain to make sure that our efforts are

7           targeted towards trial preparation as opposed to

8           scatter shot, that would be great.

9                     THE COURT: Okay.

10                    MR. GILBERT: Sure.  We absolutely

11          agree, Your Honor.

12                    MR. CHADWICK:  As do we.

13                    THE COURT: Then while your language

14          is a little different than I usually do, I'm fine

15          plugging in basically your language on

16          interrogatories, all of the discovery pieces;

17          interrogatories, document requests, admissions

18          and fact depositions.

19               You seem to have worked out some language

20          regarding that and how you kind of want that to

21          go, am I correct in that?

22                    MR. GILBERT: Yes, Your Honor.

23                    THE COURT: Pages 14 and 15, I will

24          even add Paragraph 6 from the bottom of 14 to 15.

25          I may even steal some of this language some day

                                                          19


1          because it's obviously a way to work out, you

2          know, kind of how multiple parties in different

3          cases might be able to proceed, so I am adding

4          all of that in, so you get all that.

5                    As far as the experts are concerned, this

6          is the way I look at experts:  I say -- I look at

7          whatever the top number is and then I say each

8          side, so you know, each side gets up to five and

9          what I'm hopeful is that the plaintiffs on each

10          side, you know, that we won't see five in one and

11          five in the other.  Hopefully you will just have

12          five.  I am not going to order that only because

13          I think they are different cases, but I am

14          assuming that you'll work to that.

15                    MR. GILBERT:  We will, Your Honor.

16                    THE COURT: All right.  Then I am

17          going -- because of that and because of where I

18          cutoff now discovery, I am going with the

19          plaintiff's schedule regarding identification and

20          reports of rebuttal.  Let's see.  Let me just

21          look at something here.

22                Do you have -- what page are we on?  We

23          are on 16.  Okay.  So you have identification

24          April 24th, you have reports on that same day and

25          then you just -- so you're not splitting up

20

1           identification and report dates.  You're just

2           doing -- you're going to turnover reports that's

3           going to have the identification right there and

4           then they will a month to return one back?

5                     MR. CHADWICK: Your Honor, that was

6           our proposal.  I think the defendant wanted to do

7           them staggered.  Our idea was to have any

8           affirmative report on which --

9                     THE COURT: Well, let's talk about

10          that.  Your idea was to stagger them.  We'll

11          stretch it a bit more, so it depends on whether

12          you want more time or if you do want

13          identification first and --

14                    MR. BERKOWITZ:  I think that we

15          prefer to go with our schedule, assuming that

16          it's still -- given that we're now talking about

```
17        September date if it wouldn't be -- wouldn't put
18        it outside the realm.
19              THE COURT: Well, what you're doing
20        is identifying -- let's talk about that for a
21        second.  You're identifying and then reporting,
22        which is something that, you know, happens here
23        often --
24              MR. BERKOWITZ:  But --
25              THE COURT: But you're doing it in
```

21

```
1         the middle of discovery with the end being the
2         discovery cutoff basically.
3               MR. BERKOWITZ:  You know, at this
4         stage if -- you know, we had hoped to get early
5         identification very early on.  I don't know if
6         they are going to be able to identify them.  You
7         were going to be using the April date as -- as
8         the date for their identification we probably
9         would be fine with that being the date that
10        reports are issued as well, as long as we get a
11        chance to rebut those reports.
12              THE COURT: Do you -- do you think if
13        they identify and report on April 24th you would
14        have -- is that just four weeks?  What I have
```

15          done, just so you know, sometimes when it's the

16          plaintiff doing the identification report all at

17          once, I give them like an extra week or so to --

18          instead of just four weeks I will do like a five

19          week period so that they have a little bit more

20          time to find the experts and get them to report,

21          but since you made --

22                    MR. BERKOWITZ:  So far if our date

23          can be a month or five weeks after their's, that

24          would be great.

25                    THE COURT: Yes.  Okay.

22

1                    MR. GILBERT:  Your Honor, if I may,

2          the one concern we have about the sequence is

3          that particularly given that Ovation has asserted

4          some affirmative defenses in this case, we would

5          like, and it was part of our schedule, that we

6          would have the opportunity to have a rebuttal

7          report to any affirmative report that defendant

8          put forth.

9                    THE COURT: Well, the other way -- I

10          sometimes do this as party with the burden of

11          proof, I just want to make sure that everyone

12          isn't going to fight too much about what the

13      burden of proof is.  I mean if you have an

14      affirmative defense and you're putting up an

15      expert to talk about that defense, then that

16      would be your burden of proof.

17                  MALE SPEAKER:  That makes sense,

18      Your Honor.  We would be comfortable with that --

19                  THE COURT:  All right.  Let's do

20      that.

21                  MALE SPEAKER: -- where we got the

22      burden on an affirmative defense to identify the

23      expert with the initial disclosure of April 24th.

24                  THE COURT: All right.  Let's do this

25      then, let's have party with the burden of proof

23

1       4/24/09.  Rebuttal reports, whoever -- you know,

2       whoever 5/29/09.

3                  Does that give you enough time do you

4       think?

5                  MR. GILBERT:  I think so, Your

6       Honor.

7                  THE COURT: If not -- those are the

8       types of things that you might be able to

9       discuss.  Okay.  All right.

10                  Then I still have an expert deposition

11          deadline of 6/19/09.  That only gives you --

12          maybe I will put that back to 6/30/09 so you have

13          a full 30 days to talk to experts.

14                      MALE SPEAKER:  Thank you, Your

15          Honor.

16                      THE COURT: Okay.  6/30/09 for

17          getting your depositions of your experts in.

18          Okay.  And that gives you a little bit of leeway

19          between then and when trial would be.  All right.

20              Motions to amend, that's pretty quick as

21          well, but I am not sure there's anything to

22          amend, so --

23                      MR. BERKOWITZ:  We wouldn't object

24          if they wanted to withdraw any claims at any

25          time.  Short of that --

24

1                       THE COURT: You could amend by

2           withdrawing claims, probably not, you know.

3                       MR. BERKOWITZ: Or we can take an

4           apology.

5                       THE COURT: My only concern is

6           that -- well, that's literally in two weeks.  I

7           don't care if you want that to be the -- well, I

8           do care a little only because then I hear about

```
 9          it.  Let me do at least 3/2 or 3/6 I mean.  That

10          gives you at least three weeks to kind of plow

11          through some things, both sides, you know, in

12          case you have something else.

13                    MR. GILBERT: Just for clarification,

14          Your Honor, that's the date -- that would be the

15          date -- due date for filing a motion?

16                    THE COURT: Serve and file, yes.

17                    MR. GILBERT: Not on which it would

18          have to be heard?

19                    THE COURT: Right.

20                    MR. GILBERT:  Okay.  Thank you, Your

21          Honor.

22                    THE COURT: I am a serve and file

23          judge, so is Judge Ericksen, so all of these

24          deadlines have to do with serving and filing by

25          then.
```

25

```
 1                    MR. BERKOWITZ:  And just for our own

 2          planning purposes, we understand that there's not

 3          a presentation intention to amend the pleadings.

 4          Obviously if that changes, you will let us know,

 5          but I just want to make --

 6                    THE COURT: Yes.
```

```
 7                    MR. BERKOWITZ: -- should we be

 8        expecting something?

 9                    MR. GILBERT: Not from the people at

10        this table, no.

11                    THE COURT: Okay.

12                    MR. CHADWICK: No, Your Honor.

13                    THE COURT: Okay.  And then the next

14        deadline is a court deadline, non-dispositive

15        motions that don't involve expert testimony and

16        things, those are due 12 weeks after your end of

17        discovery, so by 4/30/09 you serve and file any

18        motions on your discovery issues, non-dispositive

19        motions.

20            Punitive damages aren't even applicable

21        here, are they?

22                    MALE SPEAKER:  No, Your Honor.

23                    MR. BERKOWITZ:  We have no

24        objection.

25                    THE COURT: Okay.  That's good.  All
```

26

```
 1        right.  Non-dispositive motions related to your

 2        experts, this is not in my mind, a Daubert

 3        motion.  I think a Daubert motion is primarily a

 4        District Court Judge trial issue, but if you have
```

5           things like hey, they served six expert reports

6           rather than five, whatever, you can do that by

7           6/30/09.

8                All right.  Now, dispositive motion

9           deadline, before you had it at 5/22/09.  We

10          hadn't really changed much.

11               MALE SPEAKER:  Your Honor, could I

12          make a comment?

13               THE COURT:  Yes.

14               MALE SPEAKER:  The non-dispositive

15          as to experts is the same day as the last day for

16          expert depositions.

17               THE COURT: Yes, that one I do on

18          purpose because if it's about some -- if you're

19          literally having the unusual situation where

20          you're having that expert deposed on 6/30/09 and

21          you something comes up, just write me a letter.

22          You know, just call up, say can I write a letter

23          and write a letter and say, hey, we still need

24          this motion.  I try not to drag it out too much

25          more and that's why we have it there.

27

1                So far we haven't had trouble with that

2           and for any of these dates, if you can't agree,

```
 3        if you want to change something, if you want to

 4        ask for something that isn't in here then another

 5        way to do it is you call, you ask permission to

 6        submit a letter because you have to do that with

 7        the ECF now and then just write me a letter and

 8        tell me what's going on.  Okay.

 9                THE GILBERT: Your Honor, could I

10        clarify one point on the motions?

11                THE COURT:  Yes.

12                MR. GILBERT: It's not inconceivable

13        in cases where a state like Minnesota is involved

14        that another state might have some interest and

15        might at some point want to join in a lawsuit.

16        I'm not saying that's going to happen here, but

17        to the extent I indicated we don't anticipate any

18        such thing happening, the State doesn't know if

19        that might happen here and it's conceivable that

20        it could, so I just want to be perfectly clear in

21        light of my prior comments as to what the

22        possibilities might be.

23                THE COURT: Okay.  All right.  All

24        right.  All right.  Let's go to dispositive

25        motions.  I am fine keeping that where it is,
```

     1          which is 5/22/09.  That's just a serve and file

     2          date and then you get your hearing scheduled and

     3          then you have to follow Local Rules in terms of

     4          submitting your papers and then the trial date

     5          would necessarily come from her practice, as I

     6          said, to do about four months, which is 9/21/09,

     7          so 9/21/09 is when I have your trial date.

     8               All right.  No consent -- you know,

     9          that's fine.  I understand the no consent.  You

    10          might be able to get in sooner in front of me,

    11          but honestly if you need to go to do both

    12          dispositive motions and/or trial, this is

    13          probably -- it's probably a pretty good schedule

    14          for you.

    15               In terms of informal dispute resolution,

    16          a couple of things.  I call informal dispute

    17          resolution, that's not about settlement

    18          conferences.  That's about we have some out of

    19          state counsel and if there's -- if there's a

    20          motion that doesn't have to be done on the record

    21          and formally, you know, your CEO can't appear at

    22          the deposition that day and we're having a fight

    23          about which day he has to appear, that's the

    24          one -- that's the kind of thing you can write a

    25          letter and we'll get you on the phone and we'll

1          do something more informally, if everyone agrees

2          to it because we're not going to have a formal

3          record.

4                    The other piece is settlement and you may

5          not -- I don't know.  I don't know yet what the

6          world is as to whether a settlement is a

7          possibility, probably not right now, but if you

8          get to a point you have a very fast schedule

9          here, but if this summer, for example, you want

10         to come in here and see about trying to have it

11         mediated, I'm certainly available for that and

12         that's what we do a lot of here.  I don't know if

13         you folks know that, but that's one of our main

14         roles is to do some of the mediation, so if you

15         want to do that, you need to -- someone needs to

16         write me a letter.  There's a theme here about

17         writing letters.  Someone needs to write me a

18         letter and say you know what, we'd all like to

19         come the table, but I certainly would prefer it

20         to be all in this particular case and then here

21         are some dates, are some days, here are some

22         Mondays and Wednesdays in the next 30 to 60 days

23         from this letter that we can come in, especially

24         when you have out of town people.  I like to try

25         to make sure it's a date that everyone can be

1         here in essence voluntarily.

2                If you get to a point where you're going

3         to have a trial, there's still a chance that

4         Judge Ericksen, even though it's a bench trial,

5         will have you come and see me first for a

6         mediation, so it may be voluntarily, it may be

7         not.

8                I guess the point being if it is

9         voluntary, I'd like to try to get you in on your

10        schedule.  If it's not, then you're just going to

11        have to get you folks here on my schedule.  Okay.

12               Let's talk about the protective order.  I

13        keep forgetting.  Is that -- so in what -- all

14        right.  I didn't know if I needed to be prepared

15        to answer that question today about inside --

16        outside counsel -- in-house outside counsel or if

17        you're okay going forward for now without it and

18        then deciding it later.  Sometimes those are full

19        blown formal motions and I don't know what we

20        have here.

21               MR. BERKOWITZ:  Yes, I think right

22        now we're operating under a procedure where we

23        will get the documents and they won't be shown to

24        in-house counsel.

25               We would like, Your Honor, to take the

1     issue of now let me tell you what I think is

2     right and when I say now I don't mean we have to

3     decided today, but just set some sort of schedule

4     for discussing it on a relatively expedited

5     manner.

6          The third parties that are outstanding

7     include Merck, which is producing documents and

8     they have written a letter indicating that they

9     have no objection to in-house counsel getting

10    access to the documents, so we will proceed under

11    that assumption that there's an objection.

12         Another third party, Abbott, has

13    indicated that they would have an objection to us

14    getting access.  One of the things we don't know

15    is given the overall size of Abbott's production,

16    what volume of documents within that production

17    we're truly talking about.  Are there five

18    documents that are truly super secret that they

19    don't want our general counsel, who is a lawyer

20    and would be bound by the protective order under

21    the rules of ethics we believe fits with the

22    exception, but if there were five documents that

23    we're talking about and they really are trade

24          secret type things, maybe there could be an

25          agreement, but if they are going to designate

1          half of the production, including documents

2          related to a transaction where we bought their

3          drug and our general counsel -- they could be

4          documents that frankly are documents that we have

5          seen before, we would like to know what we're

6          talking about and I think we could have a

7          productive either letter brief or something where

8          we identify really what it is our general

9          counsel's role is and why we believe he falls

10          outside of the situation where he makes any

11          competitive decision and would be allowed to do

12          that.

13               We would be happy to do that, but let's

14          first identify what we're talking about that

15          would be subject to this, because if it's really

16          small maybe we can have an agreement, but if it's

17          over broad -- our general counsel was very

18          important to the defense of his case and we would

19          like to talk with him about those documents.

20                         THE COURT: Do you know at this point

21          what we're -- what the world looks like?

22          MR. CHADWICK: From Abbott we

23      actually haven't gotten yet their final

24      designation, so we're not sure about that.  That

25      procedure makes sense.


                                                    33


1           I guess I'm constrained a bit as to what

2       I can say because of the documents we have from

3       Ovation that are marked highly confidential, but

4       we have reason to object and to suggest that the

5       general counsel is involved in deal negotiations

6       and the like, so that does raise a concern on our

7       part.

8           MR. BERKOWITZ:  Your Honor, we agree

9       with the FTC on this and we think we can wait and

10      let it -- it's still out a little bit.

11          THE COURT: Do I need to sign -- what

12      order do I need to sign?  That's what my concern

13      was.

14          MALE SPEAKER:  I guess you can sign

15      the -- I think there's a protective order that --

16          THE COURT: That just says not

17      agreed?

18          MALE SPEAKER: For now, yes.  We

19      would like, Your Honor, with respect to setup a

20          schedule for resolving it, we will work in the

21          meantime to deal with it on this, but I think if

22          we could get a schedule for briefing on the issue

23          we can at least get that moving because it is

24          something that's important.

25                          THE COURT: Briefing with -- with,

                                                              34

1          you know, like affidavits and exhibits still

2          would be a lot faster than trying to get you on

3          my calendar, to be honest with you.

4                          MALE SPEAKER:  That's certainly

5          fine, Your Honor.

6                          THE COURT: Would that be fine with

7          you guys?

8                          MALE SPEAKER:  Yes.

9                          THE COURT: Okay.  So from your point

10          of view, do I need to sign something right now in

11          order for the discovery to happen?

12                          MALE SPEAKER: No.  The reason -- we

13          stipulated to the protective order mutually with

14          the exception of that paragraph in order to have

15          a place holder so that -- so that discovery could

16          continue.

17                          THE COURT: So the stipulation

18          goes --

19                    MALE SPEAKER: The stipulation, as

20          far as we're concerned, is in place.

21                    THE COURT: Okay.  And then -- all

22          right.  All right.  Let's talk about when you --

23          because obviously that was my, in fact, concern.

24          I wasn't sure if I had a record yet to make any

25          decision about it, so we need to have that

35

1           record.  We'll, I will ask you folks, what are

2           you guys thinking about in terms of a couple of

3           weeks, tomorrow?  No, not tomorrow.

4                     MR. BERKOWITZ: I guess when are we

5           going to know what Abbott's designations are,

6           that might be helpful, but we can -- do we have a

7           sense as to that?  I don't want to ask the other

8           side?  I will ask you, can we get a sense as to

9           when Abbott will make their designation so that

10          we will see what we're talking about.

11                    THE COURT: Can we get a sense of

12          when Abbott will be make it's designation so we

13          can see what we're talking about, is that --

14                    MR. CHADWICK: Obviously we don't

15          control -- we know what Abbott has said.  They

16          have told us early next week.

17                    THE COURT:  Okay.  Good.  So if we

18          did -- all right.  So early next week you might

19          need some time to kind of sort through and then

20          figure out -- wait.  Is it just going -- no, it's

21          going to --

22                    MR. CHADWICK:  They will tell us

23          what to designate as what.  We can fairly rapidly

24          mark the things and then give them in electronic

25          form to Ovation, so that's not a big delay.

36

1                     THE COURT:  Okay.  So if we did do,

2           for example, -- if there's still a dispute, which

3           there may be as we move forward anyway, if we did

4           by the 20th, does that give everyone time to get

5           their acts together or -- this one really I am

6           fine talking to you about it because I'm -- we

7           can do like the -- we can do the 27th and the 8th

8           for -- no.  That's not right.  27th or the -- and

9           the 13th for response or 27th and the 6th for

10          response?

11                    MALE SPEAKER:  I guess one of the

12          questions is who's going -- I think the burden

13          may be on the party resisting disclosure, so if

14          we're talking about them making the filing and us

15          responding, that's fine.

16               Is that what you were contemplating?

17                    THE COURT: What is your position on

18          that?

19                    MALE SPEAKER:  Whatever the Court

20          prefers.

21                    THE COURT: Then why don't we do it

22          that way.  You can tell me what -- why don't you

23          do the first round of it on the 27th.  Let's see,

24          what will we call this?  Well, it's really a

25          protective order motion, so why don't you frame

37

1           it as that so that we have something to docket.

2           So will the 27th give you enough time --

3                     MALE SPEAKER:  Yes, Your Honor.

4           Your Honor, it's conceivable this issue could

5           apply to other third parties as well.

6                     THE COURT: Right, and so I want more

7           of a why overall that counsel should not be

8           getting --

9                     MALE SPEAKER:  I am wondering if --

10                    THE COURT: Or doesn't that apply if

11          you have -- will there be different facts

12      depending on which one?

13                  MALE SPEAKER:  It could and I am

14      just wondering if it might be a more generic

15      issue.  It could be a broader issue.  I wonder if

16      we could just try to work it out with the other

17      side and then communicate with the Court at some

18      point in time, hopefully sooner rather than

19      later, if we can't work it out and then we can

20      identify what the issue is and the breadth of it

21      because at this point we don't know for sure and

22      we'd hate to do it piecemeal.

23                  THE COURT: How many other thirds

24      parties are we talking about?

25                  MALE SPEAKER:  That's a little

38

1       uncertain, as I understand it right now.

2                   MR. BERKOWITZ: Your Honor, we will

3       always talk with the Government about how to

4       resolve this.  I think if we had those dates in

5       place it will assist in having those dialogue --

6                   THE COURT:  But I see what he's

7       saying.  If you're going to have them go first,

8       their facts over why he might -- is it he or she?

9       He?

10                        MALE SPEAKER: He, Mr. Morris.

11                        THE COURT: He will have -- I mean I

12          suppose there's a chance that Mr. Morris -- well,

13          I don't know.  I don't know if there's a chance

14          that Mr. Morris maybe could see some, either

15          because of consent or because there's no evidence

16          to show that, you know, he was involved at all in

17          whatever or if as a general matter you think he

18          is not -- a competitive decision, doesn't make

19          competitive decisions and so therefore he should

20          be able to see all of it no matter who and if

21          that's the theory then you should go first.  See,

22          that's the problem.

23                        MALE SPEAKER: Right, exactly.

24                        MALE SPEAKER:  That's fine, Your

25          Honor.  We'll go first and we'll do it on the

39

1           27th.  We have got an April 17th cutoff date and

2           it's very important to us that the issue gets

3           resolved.  If that's the situation, what we would

4           like is a designation by some date next week as

5           to what it is with respect to the third parties

6           for whom they have documents.

7                         THE COURT: Okay.  Why don't we do

8          this, why don't we say -- I am going to say --

9          let's say by the 13th, which is the end of next

10         week, whatever -- we'll frame it as this, the

11         parties need to meet and confer by February 13th

12         to try to figure out what the universe is, at

13         least with the documents that they received.

14              Then by -- and I would say continue to

15         supplement that if you receive documents

16         thereafter, but -- and then by the 27th you

17         submit a briefing on why your in-house counsel

18         should be able to be included, maybe no matter

19         what or if you have (Unintelligible), that's

20         fine, but why he's not in a role that should

21         disqualify him and then you guys will respond by

22         the 6th, March 6, so it's a week after.  Okay?

23                    MALE SPEAKER: Yes, Your Honor.

24                    THE COURT: All right.  Good.  And

25         then we'll get something out, if we need to, that

                                                        40

1          following week so you know what's going on and

2          then hopefully that will be a good six weeks

3          before the end of discovery, five weeks.  Okay.

4               Anything else we can do?

5                    MR. BERKOWITZ:  Briefly.  I don't

 6        think it is something that's ripe, I just want to

 7        put it on the radar screen as a place holder, in

 8        connection with our document request to the FTC

 9        they have indicated that they intend to assert a

10        privilege over certain documents, including

11        deliberate process and attorney-client privilege.

12        We have asked for a log.  We had some, I think,

13        productive discussions in that regard and they

14        have said -- we disagreed on the scope of what

15        that log is going to look like and they said why

16        don't you wait and see what we send you and if

17        it's not adequate, we can raise it to the Court,

18        so that's kind of where we are.  I just want to

19        let you know we can do that by way of a letter if

20        we end up having a disagreement.

21                    THE COURT:  Right.  Yes that would

22        be fine.

23                    MR. GILBERT:  We concur, Your Honor.

24                    MR. CHADWICK:  As do we.

25                    THE COURT: All right.  Anything else


                                                            41


 1        on behalf of the Government entities?

 2                    MR. GILBERT:  No, Your Honor.

 3                    MR. CHADWICK: No, Your Honor.

4               MALE SPEAKER:  Your Honor, with

5       respect to the third party documents, as I

6       understand it, they had a group of documents,

7       third party from the pre-complaint proceedings

8       and then are they going -- do they intend to get

9       more documents from the third parties to

10      designate, to ask them to designate other than

11      Merck, Abbott and Bedford?

12              MALE SPEAKER:  Well, we issued

13      subpoenas, Your Honor.  We have issued subpoenas

14      to which we have attached to a stipulated

15      protective order, so anything that comes in under

16      the protective orders those parties can designate

17      essentially for themselves, but we will -- once

18      we produce the Abbott material we will have

19      produced everything, cleared the decks from

20      pre-complaint and everything else will be in the

21      context of discovery in this case.

22              MALE SPEAKER:  The FDA issue.

23              MALE SPEAKER: There's a statute that

24      protects the confidentiality of communications

25      between agencies and the FDA.  There were

42

1       communications.  The FDA can waive that.  We have

```
 2        asked them to do that.  We don't have much

 3        leverage over when they respond, but we have

 4        started that process.  We would prefer obviously

 5        that it not be an issue.  We would like them to

 6        waive the issue.  We just haven't heard back.

 7                    THE COURT: Okay.

 8                    MALE SPEAKER:  And our position on

 9        that is what we don't want to have happen is on

10        April 16th them to waive the privilege, get it

11        and then it's like oh, my God, look what we have

12        now gotten and so obviously the FDA is not here.

13        We're not asking you to set a date by which they

14        do it, but if gets late in the discovery stage,

15        we're going to object to them using those

16        documents.

17                    THE COURT: Yes.  Let us know.

18        That's something you can maybe let us know.

19        While we can't order them to do anything,

20        sometimes, you know, you can make a phone call or

21        something.

22                    MALE SPEAKER:  You're a Federal

23        Judge.

24                    THE COURT: With everyone on the

25        phone, yes.
```

```
 1                    MALE SPEAKER:  We understand, Your
 2       Honor.
 3                    THE COURT: All right.  Very good.
 4       Thank you all.  We'll be in recess then.  This
 5       will come out -- the deadlines and all of that
 6       will come out as a pre-trial scheduling order.
 7                    MALE SPEAKER: Thank you, Your Honor.
 8
 9                              *   *   *
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

44

```
 1   STATE OF MINNESOTA      )
                             )  ss.
 2   COUNTY OF DAKOTA        )

 3

 4            BE IT KNOWN, that I transcribed the

 5   tape-recorded proceedings held at the time and place

 6   set forth herein above;

 7

 8            That the proceedings were recorded

 9   electronically and stenographically transcribed into

10   typewriting, that the transcript is a true record of

11   the proceedings, to the best of my ability;

12

13            That I am not related to any of the

14   parties hereto nor interested in the outcome of the

15   action;

16

17            WITNESS MY HAND AND SEAL:

18

19

20                          S/ LESLIE PINGLEY

21                          _____

22                          Leslie Pingley

23                          Notary Public

24

25
```